IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, v. ALEXIS GUTIÉRREZ-MORENO, *et al.*, **Defendants**. | **Criminal No.** 21-245 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

Defendants Alexis Gutiérrez-Moreno, Jhoni Rafael Rodríguez, Gregorys Vanel Rodríguez-Rodríguez, Ramses Tarek Brito-Polmenares, Arévalo José López-Lugo, Jaime Rivera-Salazar, Daniel Urgano, Cristian Rodríguez-García, Del Wismar Gutiérrez-Salazar ("Gutiérrez-Salazar"), Severino De Jesús-Salazar, Juan Francisco Rivera-Rivera, Alexander Manuel Gutiérrez-Campos, Edwin José Ordaz-Batis, Yorbis Espinosa ("Espinosa"), Antonio José Labrador, Antonio Rafael Martínez-Moreno, Edi Peña-Bravo ("Peña"), and Yonathan Polanco-Beltré ("Polanco") move to dismiss the indictment for lack of jurisdiction. (Docket Nos. 108, 166, 169, 190, 192,

202 and 229.)¹  For the reasons set forth below, the motions to dismiss are **DENIED**.

## I.   Background

This action concerns an alleged attempt to import cocaine into the United States.  Drug Enforcement Administration Special Agent Jonathan Quiñones-Panet ("Quiñones") prepared an affidavit in support of the criminal complaint.  (Docket No. 1, Ex. 1.)  The following allegations derive from this affidavit.

On June 20, 2021, Royal Netherlands Navy Ship HOLLAND observed the "MI LINY" fishing vessel in international waters, approximately 130 nautical miles southwest of Isla de Aves, Venezuela.  Id. at p. 3.  A go-fast boat attached to the MI LINY trailed behind the fishing vessel.  Id.  A United States Coast Guard Law Enforcement Detachment ("USCG LEDET") located on the HOLLAND then "launched a helicopter and two (2) interceptor boats." Id. at p. 3.  Subsequently, persons on the fishing vessel threw packages into the ocean, poured "a red liquid on the aft deck,"

---

[1] The defendants filed four motions to dismiss and supplemental memoranda. (Docket Nos. 108, 128, 166, 202, 203, 217, 220, 221 and 229.) The arguments set forth in the motions to dismiss are redundant. Id.  For instance, the *pro se* motion filed by defendant Gutiérrez-Salazar and the motion to dismiss filed by Espinosa both invoke the recent First Circuit Court of Appeals' decision in United States v. Dávila-Reyes, 23 F.4th 153 (1st Cir. 2022).  (Docket Nos. 202 and 229.)  Accordingly, this Opinion and Order addresses the pending motions to dismiss without citing every relevant docket entry.

Criminal No. 21-245 (FAB)                                                  3

and cut loose the go-fast boat.  Id.  The abandoned packages contained 325 kilograms of cocaine.  Id. at p. 4.[2]

The "master made a verbal claim of Venezuelan nationality" on behalf of the fishing vessel.  Id. at p. 3.  The USCG LEDET "gained positive control of the Fishing Vessel" and the defendants were all Venezuelan nationals except Peña and Polanco, who were both citizens of the Dominican Republic.  Id. at p. 4.[3]  After vacating the MI LINY, members of the USCG LEDET arrested the defendants.  Id.  On June 22, 2021, Venezuela waived jurisdiction of the vessel, cargo, and crew.  (Docket No. 233, Ex. 1 at p. 3.)

On July 14, 2021, a grand jury returned a three count indictment charging the defendants with conspiracy to possess with intent to distribute a controlled substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) (count one), possession with intent to distribute a controlled substance aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C.

---

[2] Red liquid on the aft deck is "a method employed by drug traffickers to conceal traces of narcotics on the surfaces of the Fishing Vessel [by disrupting] accurate results from the ION Scan."  (Docket No. 1, Ex. 1 at p. 5.)

[3] Special Agent Quiñones' affidavit implies that the interdiction and wavier of jurisdiction occurred on July 20, 2021.  (Docket No. 1, Ex. 1 at p. 3.)  The Department of State Certification for the Maritime Drug Law Enforcement Act Case Involving Fishing Bessel MI LINY (VZ) Federal Drug Identification Number (FDIN) – 2021691155 ("Department of State Certification") provides, however, that the HOLLAND observed the fishing vessel on July 20, boarded the fishing vessel with the flag state's authorization on July 21, and that Venezuela waived jurisdiction on July 22.  (Docket No. 233, Ex. 1 at p. 3.)

Criminal No. 21-245 (FAB)                                                                 4

§ 70503(a)(1) and 18 U.S.C. § 2 (count two), and jettisoning property subject to forfeiture, pursuant to 21 U.S.C. § 881(a), from a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(2), 70506(d), and 18 U.S.C. § 2 (count three).  (Docket No. 83.)  The defendants move to dismiss the indictment for lack of jurisdiction.  (Docket No. 108.)

**II.  Federal Rule of Criminal Procedure 12**

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a "motion that the court lacks jurisdiction may be made at any time while the case is pending."  Fed. R. Crim. P. 12(b)(2).  On a motion to dismiss, the allegations contained in the indictment are accepted as true.  See United States v. Bohai Trading Co., Inc., 45 F.3d 577, 578 n.1 (1st Cir. 1995).

The federal judicial authority extends "to all Cases, in Law and Equity, arising under the Constitution, the Laws of the United States, and Treaties made."  U.S. CONST. art. III, § 2.  This Court possesses subject matter jurisdiction in a criminal action when the indictment charges "that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes."  United States v. González, 311 F.3d 440, 442 (1st Cir. 2002); see 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of courts of the States, of all offenses against the laws of the

Criminal No. 21-245 (FAB)                                                 5

United States."). The defendants assert that this Court lacks subject matter jurisdiction pursuant to Article I, Section 10 of the United States Constitution. (Docket No. 108.) The motion to dismiss pertains to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70502(c)(1), *et seq*.

### III. The Maritime Drug Law Enforcement Act

Congress enacted the Maritime Drug Law Enforcement Act in 1986 to diminish the operations of international drug trafficking organizations. These evasive entities "constantly refine their methods for transporting illegal narcotics from country to country." United States v. Carvajal, 924 F. Supp. 2d 219, 224 (D.D.C. 2013); see Lt. CDR Aaron J. Casavant, In Defense of the U.S. Maritime Drug Enforcement Act: A Justification for the Law's Extraterritorial Reach, 8 HARV. NAT'L SEC. J. 191, 199-200 (2017) (noting that Congress endeavored to "counter the traffickers' 'mothership' strategy, target[ting] the larger vessels sailing just outside U.S. territorial seas that were sending smaller, faster vessels to bring contraband ashore."). Consequently, the MDLEA is an expansive statute. It provides that "an individual [on board a vessel subject to the jurisdiction of the United States] may not knowingly or intentionally:"

> (1) manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance;

Case 3:21-cr-00245-FAB   Document 238   Filed 07/20/22   Page 6 of 18

Criminal No. 21-245 (FAB)                                               6

>        (2)  destroy (including jettisoning . . .), or attempt
>             or conspire to destroy, property that is subject to
>             forfeiture under section 511(a) of the
>             Comprehensive Drug Abuse Prevention and Control Act
>             of 1970.

48 U.S.C. §§ 70503(a)(1)-(2).  "[J]urisdictional issues arising under the [MDLEA] are preliminary questions of law to be determined solely by the trial judge," and do not constitute an element of the offense.  46 U.S.C. § 70504; see United States v. Gil-Martínez, 980 F. Supp. 2d 165, 168 (D.P.R. 2013) (Besosa, J.).

Vessels subject to criminal liability include, *inter alia*, ships "registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States."  46 U.S.C. § 70502(c)(1)(C); see United States v. Vilches-Navarret, 523 F.3d 1, 11 (1st Cir. 2008) (holding that a vessel "was subject to the jurisdiction of the United States" because the "Government of Honduras had granted . . . permission to enforce U.S. law against . . . its cargo and the people on board").[4]

---

[4] "Although there is a presumption that Congress does not intend a statute to apply to conduct outside the territorial jurisdiction of the United States, that presumption can be overcome when Congress clearly expresses its intent to do so."  United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003) (citing Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949)); RJR Nabisco, Inc. v. European Cmty, 136 S. Ct. 2090, 2100 (2016) ("Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application,").  Congress explicitly expressed its intent that the MDLEA prohibit acts committed beyond the territorial jurisdiction of the United States, overcoming the presumption against extraterritorial application.

Criminal No. 21-245 (FAB)                                                    7

### A.    The Piracies and Felonies Clause

According to the defendants, the MDLEA "criminalizes conduct outside the authority delegated to the Congress." (Docket No. 108.)[5]  Essentially, they contend that:

> Article I does not grant Congress the authority to prohibit drug trafficking, not intended or bound for the United States or its territories, conducted by a vessel occupied by foreign nationals in international waters, regardless of whether the vessel was identified with its nationality.

Id. at p. 11.  The defendants are incorrect.

It has long been well settled that the powers of the federal government are limited.  Consequently, Congress "can exercise only the powers granted to it."  McCulloch v. Maryland, 17 U.S. (4 Wheat) 316 (1819) (Marshall, C.J.); Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) ("The powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten, the constitution is written.") (Marshall, C.J.) (invalidating a provision of the Judiciary Act of 1789).  The MLDEA derives from Article I, which grants Congress the authority to "define and punish Piracies and Felonies committed on the high

---

[5] The motion to dismiss purportedly asserts an "as applied" challenge to the statute.  Docket No. 108 at p. 9; compare Bucklew v. Precythe, 139 S. Ct. 1112, 1127 (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications.") with Seling v. Young, 531 U.S. 250, 271 (2001) ("[A]n 'as applied' challenge is a claim that the statute, by its own terms, infringes constitutional freedoms in the circumstances of a particular case").  Neither challenge, however, would suffice to grant the defendants the relief they seek.

Criminal No. 21-245 (FAB)                                             8

seas, and Offences against the Law of Nations." U.S. CONST. art. I, § 8, cl. 10. Since the founding of the United States, "the ability to effectively prosecute crime committed on the high seas was seen as vital to the interests of the Confederation." Adam H. Kurland, First Principles of American Federalism and the Nature of Federal Criminal Jurisprudence, 45 EMORY L.J. 1, 23-4 (1996) (noting that the framers convened the Constitutional Convention in part because "crimes occurring on the high seas, by definition occurred outside the territorial jurisdiction of a particular state and thus made the issue of state prosecution problematic"). In fact, the Define and Punish Clause is the "only specific grant of power to be found in the Constitution for the punishment of offenses outside the territorial limits of the United States." United States v. Suerte, 291 F.3d 366, 376 (5th Cir. 2002).

In United States v. Robinson, the First Circuit Court of Appeals addressed the constitutionality of the Marihuana on the High Seas Act ("MHSA"), a drug-trafficking statute with extraterritorial reach. 843 F.2d 1 (1st Cir. 1988) (Breyer, J.). United States law enforcement officers arrested the defendants 500 miles east of North Carolina onboard the M/V Juan Robinson, a Panamanian vessel. Id. at 2. The Government of Panama subsequently "permit[ted] the United States to apply its law." Id. at 4. On appeal, the defendants argued that "Congress did not

intend to exceed the bounds of international law" by enacting a statute that "forbids offshore drug possession." Id. at 2–3.

The Robinson court upheld the defendant's conviction pursuant to the territorial principle, "a perfectly adequate basis in international law for the assertion of American jurisdiction." Id.[6] Consent provided by the Government of Panama constituted an exception to exclusive flag state jurisdiction. Id. ("It is clear, under international law's 'territorial principle,' that a 'state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state.") (citing RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 3(3) (1965)). This holding is consistent with well-established precedent. See The Schooner Exchange v. McFadden, 11 U.S. (7 Cranch) 116, 136 (1812) ("The jurisdiction of the nation within its own territory is necessarily exclusive and absolute . . . All exceptions, therefore, to the

---

[6] The territorial principle provides that "a state may exercise jurisdiction with respect to all persons or things within its territory." Benedict on Admiralty, § 112(a)(3) (2019) (hereinafter, "Benedict"). This doctrine is "the most common basis of jurisdiction over crime in the United States". Christopher L. Blakesley, Criminal Law: United States Jurisdiction Over Extraterritorial Crime, 73 J. CRIM. L. & CRIMINOLOGY 1109, 1114 (1982). Pursuant to the territorial principle, "ships on the high seas are regarded as [the] territory of their flag state and placed under the exclusive jurisdiction of the latter by customary international law." Id. § 112(a)(4); United States v. Arra, 630 F.2d 836 (1st Cir. 1980) ("Vessels have the nationality of the nation whose flag they are entitled to fly . . . and are subject to [that] nation's jurisdiction when on the high seas.").

Criminal No. 21-245 (FAB)                                              10

full and complete power of a nation within its own territories, must be traced to the consent of the nation itself") (Marshall, C.J.); United States v. Green, 671 F.2d 46, 52 (1st Cir. 1982) (holding that the Convention on the High Seas and federal statutes provide "ample authority for the Coast Guard to board and search a foreign flag vessel [in international waters] when the flag state consents").

Courts routinely rely on the rationale set forth in Robinson, solidifying the consent exception to flag state jurisdiction. In United States v. Cardales, the crew of a "go-fast" vessel jettisoned 1080 pounds of marijuana into the Atlantic Ocean, approximately 150 miles south of Puerto Rico. 168 F.3d 548, 551 (1st Cir. 1999). The flag state confirmed "that [the vessel was of] Venezuelan registry . . . and authorized the arrest of and application of [the MDLEA]." Id. at 552. The crew members argued on appeal that "the Fifth Amendment Due Process Clause requires the government to prove a nexus between their criminal conduct and the United States." Id. Flag state consent satisfied due process requirements, however, obviating an obligatory nexus to the United States. Id. In *dictum*, the First Circuit Court of Appeals observed that:

> The question of whether Congress intended to override international law is not presented here. To the extent that international law requires a nexus to the United States, that nexus requirement is not overridden by the MDLEA, but instead is satisfied by the foreign flag nation's authorization to apply U.S. law to the defendants and by the congressional finding that drug trafficking aboard vessels threatens the security of the United States.

Id. at 553 n.2.

The First Circuit Court of Appeals has consistently declined to mandate a nexus requirement in MDLEA prosecutions. See United States v. Rodríguez, 507 F.3d 749, 761-62 (1st Cir. 2007) ("We have previously held that the MDLEA does not contain such a nexus requirement; the flag nation's consent to jurisdiction is sufficient") (citing United States v. Bravo, 489 F.3d 1, 7 (1st Cir. 2007) ("We do not read the MDLEA to require a jurisdictional nexus.")); United States v. Nueci-Peña, 711 F.3d 191, 197 (1st Cir. 2013) (holding that the "MDLEA does not require a nexus between a defendant's conduct and the United States"). Indeed, district courts often cite Robinson and its progeny in denying motions to dismiss MDLEA actions on this basis. United States v. Reid-Vargas, Case No. 14-747, 2015 U.S. Dist. LEXIS 60735, at *17 (D.P.R. May 6, 2015); United States v. Díaz-Docel, 990 F. Supp. 2d 163, 164 (D.P.R. 2014) (holding that the MDLEA is a "constitutional exercise of Congress' power under the Felonies Clause'") (citing

Criminal No. 21-245 (FAB)                                              12

Nueci-Peña, 711 F.3d at 198)) (Besosa, J.).[7]  Moreover, the majority of federal appellate courts are in agreement that Congress acted within the parameters of Article I in enacting the MDLEA.[8]

The circumstances before this Court are glaringly similar to the facts in Cardales.  The Government of Venezuela consented to the application of United States law.  (Docket No. 233, Ex. 1.)  The defendants are foreign citizens, the MI LINY is registered in Venezuela, and interdiction occurred on the high seas.  (Docket No. 1, Ex. 1.)  The MDLEA is applicable because the

---

[7] See also United States v. Salazar-Realpe, Case No. 15-087, 2015 U.S. Dist. LEXIS 80016 *7 (D.P.R. June 18, 2015) (holding that the "MDLEA is constitutionally valid under the Define and Punish Clause") (Delgado-Hernández, J.); United States v. Ramírez, Case No. 19-117, 2019 U.S. Dist. LEXIS 189135 *4-5 (D.P.R. Oct. 28, 2019) (holding that the "MDLEA does not exceed Congress' power under the Define and Punish Clause") (Cerezo, J.); United States v. Trapp, Case No. 16-159, 2017 U.S. Dist. LEXIS 101569 *17 (D.P.R. May 11, 2017) (holding that the "Felonies Clause provided sufficient congressional authority to enact the MDLEA") (McGiverin, Mag. J.); Singleton v. United States, 789 F. Supp. 492 (D.P.R. 1991) ("[T]here is nothing offensive to the Constitution nor inconsistent with international law for the United States to assert jurisdiction over its own vessel in international waters to prohibit the activity prescribed by this statute, not for the United States to do the same over a vessel the flag country of which has ceded jurisdiction to the United States.") (Fusté, J.).

[8] See United States v. Pérez-Oviedo, 281 F.3d 400, 403 (3rd Cir. 2002) (holding that MDLEA "expresses the necessary congressional intent to override international law to the extent that international law might require a nexus to the United States for the prosecution of the offenses defined in the [statute]") (quotation omitted); Suerte, 291 F.3d at 375 (holding that "international law does not require a nexus" when the flag state consents to the application of United States law); United States v. Rendón, 354 F.3d 1320, 1325 (11th Cir. 2003) (holding that "this circuit . . . has not embellished the MDLEA with a nexus requirement)" (citation omitted).  The Ninth Circuit Court of Appeals adopts a minority view, however, "require[ing] a "nexus between the prohibited activity and the United States" pursuant to the Due Process Clause.  United States v. Perlaza, 439 F.3d 1149, 1168-69 (9th Cir. 2006) ("The fact that the Government received Colombia's consent to seize the members of the Gran Tauro, remove them to the United States, and prosecute them under United States law in federal court does not eliminate the nexus requirement.").

Criminal No. 21-245 (FAB)                                         13

flag state provided consent to prosecute.  Extraterritorial jurisdiction is proper pursuant to the territorial principle.

The defendants cite United States v. Bellaizac-Hurtado, 700 F.3d 1245 (11th Cir. 2012), for the proposition that "drug trafficking is not the type of conduct that the Laws of Nations proscribe."  (Docket No. 108 at p. 10.)  Bellaizac-Hurtado is inapplicable because the defendants in that case engaged in criminal conduct in foreign territory, not on the high seas.  Id. at 1257-58.  In fact, the Bellaizac-Hurtado court recognized that Article I grants Congress the "constitutional authority to restrict conduct on the high seas."  Id. at 1257 ("We have always upheld extraterritorial convictions under our drug trafficking law as an exercise of power under the Felonies Clause."); United States v. Cabezas-Montano, 949 F.3d 567, 587 (11th Cir. 2020) (holding that the "MDLEA is a valid exercise of Congress's power under the Felonies clause as applied to drug trafficking crimes without a 'nexus' to the United States").

**B.   Jurisdiction Rests with the United States**

The defendants argue that the MI LINY is "subject to the jurisdiction of the Government of the Netherlands, and as such [they had] no duty to [*sic*] obligation to comport [their] conduct with the requirements of the MDLEA simply because there was a Coast Guard LEDET on board a Dutch warship."  (Docket No. 108 at p. 19.)

Criminal No. 21-245 (FAB)                                         14

They cite no authority from domestic or international law sources to support this proposition. The MDLEA is devoid of any requirement mandating that the ship conducting an intervention belong to the United States. The United States Coast Guard preformed the interdiction. (Docket No. 1, Ex. 1.) Venezuela waived jurisdiction to the United States. (Docket No. 233, Ex. 1.) Accordingly, the MI LINY is subject to the jurisdiction of the United States.

### C.   Waiver of Jurisdiction

The defendants maintain that the "waiver [from Venezuela] must have been obtained prior to seizure of the ship and its crew, as it is apparent from both U.S. v. Dávila-Reyes and U.S. v. Cardeles." (Docket No. 166 at p. 5; see Docket No. 202 at p. 2.) The defendants' interpretation of precedent is misguided. Dávila-Reyes and Cardeles pertained to stateless vessels on the high seas and the purported nexus requirement, respectively. 23 F.4th 153; 168 F.3d 548. These decisions did not, however, concern the process of flag state waiver. In fact, in Cardales, the United States Coast Guard boarded a suspect vessel **before** obtaining consent from Venezuela. 168 F.3d at 551-52. The First Circuit Court of Appeals affirmed the conviction in that case. Id. at 558.

To facilitate expeditious consent and waiver, the MDLEA provides that the flag state may provide registry information "by

Criminal No. 21-245 (FAB)                                        15

radio, telephone, or similar oral or electronic means." 46 U.S.C. § 70502(d)(2).[9] A Department of State certification is conclusive proof of a nation's claim of registry. Id.; United States v. Cardales-Luna, 632 F.3d 731, 737 (1st Cir. 2011) (holding that the Secretary of State designee "need only certify that the 'foreign nation' where the vessel is registered 'has consented or waived objection'" to United States prosecution).

The motion to dismiss assumes that the seizure of the MI LINY occurred without authorization from Venezuela. The Department of State Certification provides, however, that the USCG LEDET boarded the MI LINY with "Venezuela's authorization as the presumptive flag state pursuant to paragraph 1 of the Diplomatic Note between the Bolivarian Republic of Venezuela and the United States of America, dated April 8, 2021." (Docket No. 233, Ex. 1 at p. 1.) On June 22, 2021, Venezuela then "waived its primary right to exercise jurisdiction and authorized the Government of the United States to enforce its laws against crew members." Id. at p. 3. The defendants' argument fails even if the United States did, indeed, obtain post-seizure waiver of jurisdiction. The "exact timing of a flag nation's permission is not a condition to

---

[9] Every vessel is required to "sail under the flag of one State only and, save in exceptional cases . . . shall be subject to its exclusive jurisdiction on the high seas." Convention on the High Seas, art. 6, Apr. 29, 1958, 13 U.S.T. 2312, 450 U N.T.S. 82.

Criminal No. 21-245 (FAB)                                              16

consent under subsection (c)(1)(C)." United States v. Bustos-Useche, 273 F.3d 622, 627 (5th Cir. 2001); United States v. Greer, 285 F.3d 158, 175-76 (2d Cir. 2002) (holding that "consent under the MDLEA can relate back to activity that occurred before consent"); United States v. Juda, 46 F.3d 961, 966 (9th Cir. 1995) ("[W]hen MDLEA jurisdiction is premised on consent of the flag nation, such consent relates back to activity that occurred prior to consent."); United States v. Devila, 216 F.3d 1009, 1017 (11th Cir. 2000) ("Thus, while the individuals may challenge jurisdiction over a vessel on the basis that the flag nation failed to consent before trial, they may not do so on the basis that the flag nation's consent was obtained after the vessel was boarded.").

### D.  United States v. Dávila-Reyes

The defendants seek refuge in inapplicable precedent. They contend that Dávila-Reyes "recognized that the prosecution of foreign nationals seized on the high seas would not be proper unless the targeted activity and seizure occurred on a stateless vessel." (Docket No. 203 at p. 4.) In that case, the First Circuit Court of Appeals held that the phrase "vessels without nationality" is coextensive with the "international law definition of statelessness." 23 F.4th at 172. The master of a go-fast boat "claimed Costa Rican nationality for the vessel but did not provide any documentation to support that claim." Id. at 158. Costa Rica

Criminal No. 21-245 (FAB)                                                17

officials could neither confirm nor deny the vessel's registry. Id. at 159. Consequently, law enforcement officers determined that the vessel was "without nationality and subject to U.S. jurisdiction" pursuant to 46 U.S.C. § 70502(d)(1)(C). Id.[10]

On appeal, the defendants argued that "their vessel was not properly deemed stateless." Id. at 170. The Dávila-Reyes court agreed, holding that section 70502(d)(1)(C) is inconsistent with international law. Id. at 188. Pursuant to the latter, a master's verbal declaration of registry establishes a presumption of nationality. Id. at 188-89 ("Rejecting a verbal claim of nationality based on the lack of substantiating evidence [i.e. confirmation of registry from Costa Rica] negates that distinct method for claiming nationality recognized both by the MDLEA and by international law.").

---

[10] Vessels without nationality are subject to the MDLEA. Stateless vessels include, but are not limited to:

> (A) a vessel abroad which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed;
>
> (B) a vessel abroad which the master or individual in charge fails, on request of an officer of the United States authorized to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel; and
>
> (C) a vessel abroad which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

46 U.S.C. §§ 70502(d)(1)(A)-(C).

The MI LINY is **not** a stateless vessel, rendering the decision in Dávila-Reyes immaterial to this action. The plethora of authority concerning flag state consent from this jurisdiction remains intact until and unless the First Circuit Court of Appeals, the Supreme Court, or Congress determine otherwise. Consequently, Dávila-Reyes provides no shelter from an MDLEA prosecution based on flag state consent.

## IV. Conclusion

For the reasons set forth above, the defendants' motions to dismiss are **DENIED**. (Docket Nos. 108, 166, 169, 190, 192, 202 and 229.) Trial will be scheduled after Magistrate Judge Marcos López's Report and Recommendation on the motion to suppress is resolved after any objection is filed. See Docket Nos. 108, 214 and 233.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 20, 2022.

> s/ Francisco A. Besosa
> FRANCISCO A. BESOSA
> SENIOR UNITED STATES DISTRICT JUDGE